United States District Court
Southern District of Texas
**ENTERED**
August 22, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

JANE DOE A/K/A LOLA §
§
VS. § CIVIL ACTION NO. 5:23-CV-40
§
HECTOR RODRIGUEZ, *et al.*, §

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Plaintiff's Motion for Default Judgment, (Dkt. No. 24), as to Plaintiff's claims for damages against Defendant Hector Rodriguez. On April 24, 2025, U.S. District Judge John A. Kazen referred Plaintiff's motion to the Undersigned for a report and recommendation. (Dkt. No. 57). On July 31, 2025, the Undersigned held an evidentiary hearing on damages. (Min. Ent. July 31, 2025).[1] After reviewing Plaintiff's arguments, the record, and the applicable law, the Undersigned **RECOMMENDS** Plaintiff's Motion for Default Judgment, (Dkt. No. 24), as to Plaintiff's claims for damages be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

On April 12, 2023, Plaintiff filed her original complaint against Defendant Hector Rodriguez ("Defendant Rodriguez"), Defendant Webb County, Texas ("Defendant Webb County"), Defendant Webb County Sheriff's Office ("Defendant Sheriff's Office"), and Sheriff Martin Cuellar ("Defendant Cuellar"). (Dkt. No. 2). In

---

[1] The hearing was initially held on July 15, 2025, and continued on July 31, 2025. (Min. Ents. July 15, 2025 and July 31, 2025).

that original complaint, Plaintiff alleged that on or about January 19, 2022, Defendant Rodriguez sexually assaulted her while she was under his supervision during her detention at the Webb County Jail. (*Id.* at 2). As a result of the assault, Plaintiff sought to recover against Defendants pursuant to the following causes of action:

- Count 1: 42 U.S.C. § 1983 – Failure to Train or Supervise (Against Defendant Webb County)

- Count 2: 42 U.S.C. § 1983 – Failure to Train or Supervise (Against Defendant Webb County)

- Count 3: 42 U.S.C. § 1983 – Unreasonable Seizure, Substantive Due Process, and Abuse of Power (Against All Defendants)

- Count 4: 42 U.S.C. § 1983 – Violation of Bodily Integrity (Against All Defendants)

- Count 5: Negligent Supervision (Against Defendant Webb County)

- Count 6: Negligent Failure to Warn or Protect (Against Defendants Webb County and Webb County Sheriff's Office)

- Count 7: Negligent Failure to Train or Educate (Against Defendant Webb County)

- Count 8: Negligent Retention (Against Defendant Webb County)

- Count 9: Negligent Infl[i]ction of Emotional Distress (Against All Defendants)

- Count 10: Vicarious Liability (Against Defendants Webb County and Webb County Sheriff's Office)

- Count 11: Collusion (Against All Defendants)

- Count 12: State Law Claim – Negligence (Against All Defendants)

(*Id.* at 5–19).

On April 13, 2023, a summons was issued as to each Defendant. (Dkt. Nos. 3–6). Shortly thereafter, return of service as to each Defendant was filed with the Court. (Dkt. Nos. 7–10). On May 19, 2023, Defendant Sheriff's Office filed a Motion to Dismiss.[2] (Dkt. No. 11), That same day, Defendant Webb County and Defendant Cuellar filed their timely Answer. (Dkt. No. 12). However, no response was filed by Defendant Rodriguez. On July 27, 2023, the Court ordered Plaintiff to advise the Court on how she intended to proceed with respect to Defendant Rodriguez in light of his non-response. (Dkt. No. 14). On July 3, 2023, Plaintiff filed an Unopposed Request for Entry of Default, (Dkt. No. 15), which was subsequently amended on July 6, 2023. (Dkt. No. 16). On July 11, 2023, the Clerk of Court entered default against Defendant Rodriguez. (Dkt. No. 17). On September 18, 2023, Plaintiff filed the instant Motion for Default Judgment. (Dkt. No. 24).

On April 12, 2024, District Judge John A. Kazen issued an Order granting in part and denying in part Plaintiff's Motion for Default Judgment. (Dkt. No. 34). In that Order, the Court entered default judgment against Defendant Rodriguez as to Plaintiff's Section 1983 claims for unreasonable seizure under the Fourth and Fourteenth Amendments of the Constitution and for violation of bodily integrity under the Fourteenth Amendment's Due Process Clause. (Dkt. No. 34 at 10). However, as for Plaintiff's causes of action for negligent infliction of emotional distress, collusion, and negligence against Defendant Rodriguez, the Court found that

---

[2] Defendant Sheriff Office's motion to dismiss was granted on June 26, 2023. (Dkt. No. 13).

those causes of action should be dismissed without prejudice. (*Id.*). Finally, the Court explained that it would defer ruling on Plaintiff's damages against Defendant Rodriguez until the case had been resolved as to all remaining Defendants. (*Id.*).

On February 11, 2025, the remaining parties filed a joint advisory requesting court-hosted mediation. (Dkt. No. 49). Subsequently, the Court conducted a mediated settlement conference at which Plaintiff announced that the remaining parties reached a settlement agreement. (Min. Ent. Apr. 3, 2025). As a result of this settlement, the Court directed Plaintiff to notify the Court whether she still intended to pursue her claim for damages against Defendant Rodriguez. (Dkt. No. 54 at 1–2). On April 16, 2025, Plaintiff advised the Court that she intended to pursue her claim for damages against Defendant Rodriguez. (Dkt. No. 56). Prior to setting a hearing on damages, however, the Undersigned directed Plaintiff to file supplemental briefing in support of her claim for damages on April 28, 2025. (Dkt. No. 58). When Plaintiff failed to timely file the supplemental briefing, the Court again ordered Plaintiff to file supplemental briefing no later than May 16, 2025. (Dkt. No. 59). Plaintiff subsequently filed a Supplemental Brief in Support of Damages and sealed exhibits in support. (Dkt. Nos. 60, 61). Subsequently, the Court scheduled an evidentiary hearing on damages. (Dkt. No. 66).

On July 15, 2025, an evidentiary hearing on damages was held. (Min. Ent. July 15, 2025). During that hearing, Plaintiff presented arguments included in her supplemental briefing and exhibits previously provided to the Court. (*Id.*). However, finding that more information was required, the Court reset the hearing for July 31,

2025, and directed Plaintiff to file any materials necessary to support each request for damages and her request for attorney's fees. (*Id.*). Subsequently, Plaintiff filed an amended brief and accompanying exhibits as directed by the Court, (Dkt. No. 76), and the Court held another evidentiary hearing on damages. (Min. Ent. July 31, 2025). At the hearing, the Court addressed Plaintiff's Motion for Default Judgment, (Dkt. No. 24), Supplemental Brief in Support of Damages, (Dkt. No, 60), and Amended Supplemental Brief in Support of Damages. (*Id.*).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). In determining whether default judgment should be granted courts "may conduct hearings or make referrals . . . when . . . it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter. Fed. R. Civ. P. 55(b)(2)(A)–(B). "While alleged facts are taken as true, the court has discretion to award damages." *Laerdal Med. Corp. v. Basic Med. Supply, LLC*, No. H-16-35, 2016 WL 6436557, at *2 (S.D. Tex. Oct. 31, 2016) (citing *United States ex rel. M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

## III.  ANALYSIS

### A. Compensatory Damages

In Plaintiff's first request, Plaintiff seeks to recover compensatory damages "to

fully compensate Plaintiff" for any harms incurred as a result of the sexual assault in this case. (Dkt. No. 76 at 4). Specifically, Plaintiff seeks to recover $770,252.69 for past and future medical expenses, $770,252.69 for mental and emotional distress, and $770,252.69 for functional impairment and loss of quality of life, for a total of $2,310,758.07 in compensatory damages. (*Id.* at 4–7).

"The 'basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights . . . .'" *Doe v. Neal*, No. SA-14-CA-102-XR, 2015 WL 3688259, at *4 (W.D. Tex. June 12, 2015) (quoting *Cary v. Piphus*, 435 U.S. 247, 255 (1978). Ultimately, courts look to common law tort principles to determine whether compensatory damages pursuant to § 1983 should be granted. *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994). Under § 1983, compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation . . ., personal humiliation, and mental anguish and suffering." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974). "Loss of capacity for enjoyment of life is conceptually distinct from mental anguish," however, it is nonetheless recoverable in a § 1983 claim. *Chacon v. Copeland*, 103 F. Supp.3d 827, 838 (W.D. Tex. Apr. 30, 2015) (citing *Smith v. Harrah's New Orleans Mgmt. Co.*, 213 Fed. Appx. 353, 361 (5th Cir. 2007) (unpublished) ("A Plaintiff is entitled to recover damages for loss of life enjoyment if [s]he proves that [her] lifestyle was detrimentally altered or if [s]he was forced to give up activities because of [her] injury. Loss-of-life-enjoyment damages can be awarded separately from other general

6

damages, such as mental and physical pain and suffering.").

While common law principles unequivocally provide the types of damages available in a § 1983 case, how and when said damages have been established are not. This is because § 1983 and the common law "do not contain every rule of decision required to adjudicate claims asserted under them." *Burnett v. Grattan*, 468 U.S. 42, 47 (1984). Instead, 42 U.S.C. § 1988 provides that courts should engage in a "three-step process to borrow an appropriate rule" when the applicable rule is not available. First, courts look to the law of the United States "so far as such laws are suitable to carry the same into effect." *Id.* at 48 (citing 42 U.S.C. § 1988). If such law is unavailable, courts then must move to the second step which requires considering the application of state "common law, as modified and changed by the constitution and statutes" of the forum state. *Id.* Finally, the third step requires the court, should it find state law to be applicable, to consider whether applying state law would be "inconsistent with the Constitution and laws of the United States." *Id.* Taking these principles into consideration, the Undersigned moves to each of Plaintiff's individual requests.

### a. Past and Future Medical Expenses

As part of her request for past and future medical expenses, Plaintiff submitted a "Life Care Plan" and affidavit in support of said plan, (Dkt. No. 76-1), and medical records for any past medical expenses Plaintiff incurred in this case. (Dkt. No. 76-4). The Life Care Plan "is a document . . . which is used to provide an organized and concise plan for the current and future needs of [Plaintiff]." (Dkt. No. 76-1 at 7). The

plan, which was prepared by one of Plaintiff's experts, Dr. Huma Haider ("Dr. Haider"), itemizes the cost of future care as a result of the assault in this case and breaks down the future costs into five separate categories: (1) Evaluations, (2) Treatments and Therapies, (3) Medications, (4) Rehabilitation Services, and (5) Facility Care. (*Id.*). The Plan estimates that the total cost of Plaintiff's future medical expenses will be $770,252.69. (*Id.*). The affidavit in support of said plan, which was also provided Dr. Haider, explains that the Life Care Plan reflects her professional opinion about the current and future care needs of Plaintiff. (*Id.* at 2). Moving to Plaintiff's request for past medical expenses, Plaintiff explains that her "modest" past medical expenses are essentially subsumed into her request for future medical expenses. (Dkt. No. 76 at 5). As a result, Plaintiff only requests the amount of medical expenses as provided by the Life Care Plan—i.e. future medical expenses[3] (*Id.*).

Here, federal common law provides no guidance as to how future medical expenses can be established. Accordingly, the Undersigned finds that the application of Texas law regarding establishing future medical expenses is appropriate. Under Texas law, a plaintiff "must present evidence to establish that in all reasonable probability, future medical care will be required" and that the cost of said care is reasonable. *Palafox v. Zamudio*, No. 5:22-CV-73, 2023 WL 5173765, at *6 (S.D. Tex. June 12, 2023) (quoting *Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 828 (Tex. App.—Hous. [1st Dist.] 1999, pet. denied). An award for future medical

---

[3] Plaintiff relies solely on evidence of her future medical expenses to support her claim for "past and future medical expenses." As a result, the Undersigned finds that Plaintiff is not actually seeking past medical expenses. However, as explained more below, the Undersigned finds that even if Plaintiff was seeking past medical expenses, she has nonetheless failed to support the award of said damages.

expenses can be "based upon the nature of the injuries incurred together with the medical treatment rendered, and the injured party's condition at trial." *Id. Antonov v. Walters*, 168 S.W.3d 901, 908 (Tex. App.—Fort Worth 2005, pet. denied). "Although the preferred method [of establishing future medical costs] is through expert medical testimony, no precise evidence is required." *Cavazos v. A&T Brothers, Inc.*, No. 5:23-CV-110, 2024 WL 3891402, at *12 (S.D. Tex. July 12, 2024) (citing *Gunn v. McCoy*, 489 S.W.3d 75 (Tex. App.—Hous. [14th Dist.] 2016), *judgment aff'd*, 554 S.W.3d 645 (Tex. 2018)).

Here, Plaintiff has provided evidence that show that, with reasonable probability, she will require some medical care in the future. However, Plaintiff has provided no evidence as to whether the cost of said medical care is reasonable. Specifically, neither the Life Care Plan nor Dr. Haider's affidavit indicate whether the cost of said future medical care is reasonable, only that the opinions presented are based on a reasonable degree of medical certainty. Additionally, as the Undersigned will explain further below, the Undersigned is unable to rely on any of the past medical expenses incurred in this case to assist in determining the future medical expenses. Accordingly, the Undersigned finds that awarding economic medical expenses in this case would be improper and **RECOMMENDS** that the Court **DENY** Plaintiff's request for past or future medical expenses.

### b. Mental and Emotional Distress and Functional Impairment and Loss of Quality of Life

As to Plaintiff's remaining compensatory damages, Plaintiff requests $770,252.69 for any mental anguish or emotional distress and $770,252.69 for loss of

enjoyment of life and loss of normal function for a total of $1,540,505.38 in non-economic compensatory damages as a result of the sexual assault in this case. (Dkt. No. 76 at 5–6). Explaining why such an amount is appropriate, Plaintiff cites to "personal injury practice," in which it is allegedly "common to value pain and suffering and other non-economic harm as a multiple of the economic damages, especially in cases of severe, permanent injury." (*Id.* at 5).

In examining whether requested compensatory damages have been established in sexual assault cases, courts recognize the general principle that calculating an amount that should be awarded in sexual assault cases is a "very difficult" task. *Doe v. D'Arros*, No. 6:21-CV-00430, 2024 WL 217849, at *12 (W.D. La. Jan. 19, 2024). As a result, courts often look to what is awarded in similar cases. In *Tubby v. Allen*, a court in the Eastern District of Texas considered the amount of compensatory damages that should be awarded when an officer abuses their position of power to sexually assault an inmate or someone within their custody. No. 6:16-CV-972, 2019 WL 4565072, at *8 (E.D. Tex. Sept. 3, 2019), *report and recommendation adopted*, 2019 WL 4538028 (E.D. Tex. Sept. 19, 2019). As part of that court's decision, the court analyzed compensatory awards given in various other cases involving sexual assaults that are similar to the one before the Eastern District of Texas court. *Id.* at *6 (citing cases). In the cases cited, courts awarded amounts ranging from $150,000 in compensatory damages to upwards of $1,000,000. *Id.* Importantly, however, each case recognized the importance of awarding compensatory damages as

a result of a sexual assault committed by a prison guard or like official. *Id.*

Here, the Undersigned finds that awarding non-economic compensatory damages is appropriate. As part of the damages hearing, Plaintiff provided an affidavit in which she explained the extent to which the assault has affected her life. (Dkt. No. 76-5). In that affidavit, Plaintiff avers that she has suffered extensively as a result of the sexual assault. Plaintiff's claims are further supported by the conclusions provided by Plaintiff's licensed professional counselor, Mrs. Rocio J. Tharp ("Mrs. Tharp"). Following the sexual assault in this case, Mrs. Tharp interviewed Plaintiff to determine the impact the event had on both her life and mental and emotional state. (Dkt. No. 76-2). Following said interview, Mrs. Tharp provided a report in which Mrs. Tharp concluded that "[Plaintiff] has been emotionally affected and her sense of vulnerability has been heightened" as a result of the assault. (*Id.* at 13). Mrs. Tharp further concluded that this sense of vulnerability has made it difficult for her to form normal relationships with others, specifically finding that the assault "has caused [Plaintiff] to be suspicious and scared of approaching family members, health professionals, and law enforcement officers." (*Id.*). Accordingly, Undersigned finds that non-economic damages are warranted.

Moving to the amount that she be awarded, the Undersigned finds Plaintiff's method of calculating non-economic damages to be inappropriate. As provided above, courts do not generally apply a "multiplier of three" to determine non-economic damages in § 1983 cases. Instead, courts will review monetary awards given in similar cases, and the evidence presented to the court in the specific case. *Doe v.*

*D'Arros*, No. 6:21-CV-00430, 2024 WL 217849, at *12 (W.D. La. Jan. 19, 2024). After reviewing awards given in similar cases and the evidence presented to the Court regarding the Plaintiff's loss of quality of life, functional impairment, and mental and emotional distress suffered following the assault, the Undersigned finds that an award of $1,000,000 in non-economic compensatory damages is warranted in this case. *See Neal*, 2015 WL 3688259, at * 5 (awarding $1,141,318 in compensatory damages). Accordingly, the Undersigned **RECOMMENDS** that the Court **GRANT in part and DENY in part** Plaintiff's request for non-economic compensatory damages. The Undersigned **RECOMMENDS** that Plaintiff be awarded $1,000,000 in compensatory damages.

## B. Punitive Damages

Plaintiff also seeks to recover punitive damages in the amount of $2,310,758.07. (Dkt. No. 76 at 7). Specifically, Plaintiff requests the Court award punitive damages in an amount equal to the compensatory award to punish Defendant Rodriguez and "to deter others in positions of authority" from engaging from similar behavior. (*Id.* at 7–8). In support of her request for punitive damages, Plaintiff filed an affidavit in support of her damages with the Court explaining the extent to which the assault in this case has harmed her, both mentally and physically. (Dkt. No. 76–5 at 2).

Generally, punitive damages are not recoverable against a municipality or government official in their official capacity in § 1983 claims. *See Torres v. Houston*, No. H-12-2323, 2012 WL 6554157, at *3 (S.D. Tex. Dec. 14, 2012). However, punitive

12

damages are available to a Plaintiff when they are suing a government official under § 1983 for actions taken in the defendant's individual capacity. *Ibrahim v. Houston*, No. H-07-4329, 2008 WL 2962887, at *7 (S.D. Tex. July 29, 2008). "Whether punitive damages are awarded is in the discretion of the fact-finder and is based on whether the conduct exhibited 'reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law.'" *Fitzgerald*, 2018 WL 2046969, at *3 (quoting *Smith v. Wade*, 461 U.S. 30, 34–36 (1983)). Beyond considering whether punitive damages are appropriate in the first place, however, courts must also consider whether the amount of punitive damages are not so disproportionate as to "jar one's constitutional sensibilities." *Id.* (quoting *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 481 (1993). To determine whether punitive damages are appropriate, courts in the Fifth Circuit often utilize a punitive-to-compensatory damages ratio. *Id.* Additionally, in considering whether an award of punitive damages is excessive, courts must consider "(1) the defendant's reprehensibility or culpability; (2) the relationship between the penalty and the harm to the victim caused by the defendant's actions; and (3) the sanctions imposed in other cases for comparable misconduct." *Id.* (citing *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 542 U.S. 424, 434–35 (1993).

Here, the Undersigned agrees that some award of punitive damages is warranted. Courts in the Fifth Circuit have found that punitive damages are warranted when a government official sexually assaults an individual while that individual is within the care, custody, and control of that government official. *See*

*Neal*, 2015 WL 3688259, at *4 (awarding an amount of $1,000,000.00 against a government official in their individual capacity for sexual assault committed while Plaintiff was handcuffed following a traffic stop); *see also Lewis v. Pugh*, 289 F. App'x 767, 777 (5th Cir. 2008) (finding an award of $250,000 punitive damage award to be appropriate when a police officer "utilize[ed] a position of trust to rape and assault" the plaintiff).

As for the amount that should be awarded, the Undersigned finds that the three factors above demonstrate that an award of punitive damages that is equal to the compensatory damages awarded would be appropriate. As Plaintiff provided in her affidavit, Defendant Rodriguez utilized a position of power to sexually assault Plaintiff while she was detained in a holding cell and vulnerable. (Dkt. No. 76-5 at 2). Defendant Rodriguez's position of power provided him with knowledge of Webb County Jail's security system and its deficiencies to avoid detection when he committed the assault. (*Id.*). This behavior is reprehensible and therefore weighs in favor of awarding punitive damages. *See Neal*, 2015 WL 3688259, at *4 (stating a police officer's use of his position of power to assault a plaintiff was "particularly reprehensible"). Second, Plaintiff has suffered significant harm as a result of the sexual assault. As explained in her affidavit, the sexual assault "has affected [her] whole life." (Dkt. No. 76-5). She has "suffered from panic attacks, deep sadness, and fear" for years since the event. (*Id.*). Additionally, Plaintiff does not expect those mental difficulties to disappear once this case is resolved. Instead, Plaintiff expects mental health to suffer for the rest of her life. (*Id.*). Punitive damages would not only

14

punish Defendant for this harm caused but deter individuals from engaging in like behavior in the future. Accordingly, this weighs in favor more than nominal punitive damages. Finally, many courts in this Circuit find a 1:1 ratio between the punitive damages award and the compensatory damages award to be appropriate in cases involving the sexual assault of an individual who is within the custody of a government official. *Neal*, 2015 WL 3688259, at *4; *Tubby*, 2019 WL 4565072, at *8.

As a result, Plaintiff's request for punitive damages that would equal compensatory damages is appropriate. Accordingly, the Undersigned **RECOMMENDS** that the Court **GRANT in part and DENY in part** Plaintiff's request for punitive damages. The Undersigned **RECOMMENDS** that Plaintiff be awarded $1,000,000 in punitive damages.

### C. Attorney's Fees

Plaintiff seeks to recover $297,000 in attorney's fees. (Dkt. No. 76 at 9). In support of this request, Plaintiff's counsel provides an affidavit in which Plaintiff's counsel explains the basis for their request. (Dkt. No. 76-3). In that affidavit, Plaintiff's counsel explains that counsel expended approximately 540 hours total on the case since its inception. (*Id.* at 2). Plaintiff's counsel further explains that each attorney involved in the case bills at a rate of $550 per hour.

"To ensure that certain federal rights are adequately enforced, Congress enacted 42 U.S.C. § 1988, which provides that a 'prevailing party' in certain civil rights actions, including § 1983 actions, may recover 'a reasonable attorney's fee as part of the costs.'" *Vasquez v. Lafaurie*, No. 4:24-CV-00595-O, 2024 WL 5220200, at

*8 (S.D. Tex. Dec. 26, 2024). "The Fifth Circuit calculates the amount of reasonable attorney's fees using the 'lodestar method' . . . ." *Aswegan v. Diesel*, No, H-19-1631, 2019 WL 10888764, at *1 (S.D. Tex. Nov. 12, 2019) (citing *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996)). The lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *U.S. Metals, Inc. v. Liberty Ins. Corp.*, No. 12-CV-00379, 2018 WL 11357088, at *1 (S.D. Tex. May 25, 2018) (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 319–20 (5th Cir. 1993). The party seeking attorney's fees bears the burden of documenting the appropriate hours expended and hourly rates. *Aswegan*, 2019 WL 10888764, at *1.

Here, Plaintiff has not provided the documentation required for the Undersigned to properly determine whether the amount of attorney's fees requested is reasonable. Plaintiff's counsel provides that they "approximate" or "estimate" that they spent 540 hours on this case, but courts in the Southern District of Texas have repeatedly declined to consider whether attorney's fees are appropriate until an itemization or breakdown of the hours expended is provided to the Court. *Vasquez*, 2024 WL 5220200, at *8; *Aswegan*, 2019 WL 10888764, at *1. The Undersigned gave Plaintiff multiple opportunities to provide the appropriate documentation, yet she failed to do so. (*see* Min. Ent. July 15, 2025; July 31, 2025). Accordingly, the Undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's request for attorney's fees.

16

### D. Litigation Expenses

Moving to Plaintiff's next request, Plaintiff seeks "$18,750.00 as reimbursement of litigation expenses" which can be "broken down as follows: $18,037 in expert witness fees, $402 in court filing fees, and $311 in other litigation expenses (such as service of process fees, postage, and copying) . . . ." (Dkt. No. 76 at 9). As for the expert witness fees, Plaintiff explains that the fees are related to charges incurred as a result of obtaining expert reports, affidavits, and availability of three expert witnesses— Dr. Huma Haider, Ms. Rocio Tharp, and Mr. Billy Johnson. (*Id.*). Plaintiff explains that these experts also provided psychological evaluations that "were indispensable in establishing damages. As for the other litigation expenses and court filing fee, Plaintiff explains that these expenses are recoverable under 28 U.S.C. § 1920.

"Federal Rule of Civil Procedure 54(d)(1) provides for an award of costs to the prevailing party unless the court otherwise directs." *Kiva Kitchen & Bath, Inc. v. Cap. Distrib., Inc.*, No. H-06-2562, 2008 WL 11452433, at *13 (S.D. Tex. Apr. 22, 2008) (citation modified). There is a "strong presumption" in favor of awarding costs, however, the decision as to whether costs should be awarded ultimately lies within the sound discretion of the court. *Thomas v. Woods*, No. H-14-2487, 2015 WL 2168726, at *2 (S.D. Tex. May 7, 2015). "Pursuant to 28 U.S.C. § 1920, a judge . . . may tax as costs the following: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the

costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court-appointed experts and interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828." *Chaves v. Cogent Med. Laboratory, LLC*, SA-19-CV-00861-ESC, 2020 WL 5096946, at (W.D. Tex. Aug. 28, 2020) (quoting 28 U.S.C. § 1920)); *see also Gaskill v. Firmso LLC*, No. 4:24-CV-1111, 2025 WL 297827, at *7 (S.D. Tex. Jan. 3, 2025). "A court may decline to award the costs listed in the statute but may not award costs omitted from the list." *Cap. Distrib., Inc.*, 2008 WL 11452433, at *13 (citing *Gaddis v. United States*, 381 F.3d 444, 452 (5th Cir. 2004); *see also Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001) ("[F]ederal courts may only award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary.").

Plaintiff is permitted to recover the costs of the $402 court filing fee under 28 U.S.C. § 1920. However, Plaintiff is not entitled to recover costs associated with any private service of process or expert-witness expenditures. As for expert-witness fees, costs associated with obtaining expert-witnesses and reports from said experts are generally not included in the list of recoverable fees under 28 U.S.C. § 1920. *Ascent Aviation, LLC v. Smith*, No. 3:23-CV-101, 2024 WL 5454640, at *3 (S.D. Tex. Dec. 12, 2024). While some of the $18,037 in expert-witness expenditures Plaintiff requests may include costs that are not expert-witness fees, Plaintiff failed to provide a Bill of Costs breaking down and itemizing the costs requested. As a result, it is not possible for the Undersigned to determine what expert-witness expenditures Plaintiff

incurred are recoverable under § 1920, and which are unrecoverable expert-witness fees. Because of this impossibility, the Undersigned finds that Plaintiff's request for $18,037 should be denied. *Thomas*, 2015 WL 2168726, at *2 (concluding a Plaintiff's request for fees should be denied when they failed to provide an itemization and documentation of each cost).

Like expert-witness fees, costs for a private process server are not recoverable under § 1920 absent a showing of exceptional circumstances. *Chembulk Hous. Pte. Ltd. v. M/V/ Monte Alegre*, Civ. A. H-15-714, 2018 WL 3756840, at *2 (S.D. Tex. Aug. 8, 2018). Plaintiff has not demonstrated that this is one of those exceptional circumstances. *GS Holistic, LLC v. Sublime Smoke & Vape LLC*, No. 4:23-CV-255-SDJ-AGD, 2024 WL 4275803, at *8 (E.D. Tex. Sept. 3, 2024). As a result, Plaintiff is not permitted to recover any cost associated with service of process. Because the costs associated with service are consolidated with Plaintiff's request for $311 in "other litigation expenses" and no breakdown or itemization of each cost was provided, it is impossible for the Undersigned to determine how much of that $311 was incurred as a result of other litigation expenses. Accordingly, the Undersigned **RECOMMENDS** that Plaintiff's request for $402 in court filing fees be **GRANTED**. However, the Undersigned **RECOMMENDS** that Plaintiff's request for $18,037 in expert-witness expenditures and $311 in "other litigation expenses" be **DENIED**.

### E. Prejudgment Interest

Plaintiff also seeks to recover prejudgment interest, in the amount of $59,002.63, for past damages that have accrued since the date of filing until the date

the damages hearing was held, case pursuant to 28 U.S.C. § 1920. (Dkt. No. 76 at 10).

While state law controls the manner in which a court calculates prejudgment interest in § 1983 claims, "[f]ederal law governs the availability of prejudgment interest in a claim arising under federal law." *San Jacinto Sav. V. Kacal*, No. 92-1833, 1993 WL 455886, at *1 (5th Cir. 1993) (unpublished) (citing *Parson v. Kaiser Aluminum & Chemical Corp.*, 727 F.2d 473 (5th Cir, 1984)); *see also Pressey v. Patterson*, 898 F.2d 1018, 1026 (5th Cir. 1990). Federal law provides that a plaintiff may be awarded prejudgment interest "(1) if the federal statute creating the cause of action does not preclude such interest, and (2) if an award of prejudgment interest would further the policies underlying the statute." *Tesch v. Prudential Ins. Co. of America*, 829 F.Supp.2d 483, 502 (W.D. La. Nov. 16, 2011) (citing *Carpenters Dist. Council v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1288 (5th Cir. 1994). "When these two criteria are met, the court has discretion to award prejudgment interest." *Id.*

While it is within the discretion of a district court to "award prejudgment interest in such cases . . . [i]t does not have to award prejudgment interest on section 1983 claims." *Kacal*, 1993 WL 455886, at *1 (citing *Hale v. Fish*, 899 F.2d 390, 404 (5th Cir. 1990). Because "[p]rejudgment interest is a measure that 'serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered," courts often refrain from awarding prejudgment interest in § 1983 claims where the primary basis for recovery was for some non-economic or intangible losses." *Rodrigue v. Morehouse Det. Ctr.*, No. 09-985, 2014 WL 2879751, at *3 (W.D. La. June 23, 2014) (quoting *West Virginia v. United States*, 479

U.S. 305, 311 n.2 (1987)). As stated above, Plaintiff explains that she requests prejudgment interest that would be based on any past medical expenses, emotional distress, and loss of quality of life accrued to compensate her for losses associated with the assault in this case. (Dkt. No. 76 at 10). A review of the record, however, demonstrates that prejudgment interest would be inappropriate in this case.

First, emotional distress and harms resulting from a loss in one's quality of life are—as Plaintiff identifies in her Amended Supplemental Brief—"non-economic damages." (Dkt. No. 76 at 5–6). As a result, it is not possible for the Undersigned to identify with precision the amount of emotional distress and other intangible harm that Plaintiff suffered during the specific period prior to the Court entering default judgment. Therefore, the Undersigned finds that any prejudgment interest that would be based on those harms would be inappropriate. Plaintiff's request for prejudgment interest based on past medical expenses in this case is similarly deficient. Plaintiff provides the Court with a Texas Civil Practice and Remedies Code § 18.001 "Affidavit Concerning Cost and Necessity of Services" to support her claim for prejudgment interest based on any past medical expenses incurred.[4] However, as many other courts in this district have found, § 18.001 does not apply in federal court and cannot be used to support a request for past medical expenses. *See Carreon v. Gamez*, 5:19-CV-124, 2022 WL 22894584, at *4 (S.D. Tex. Mar. 15, 2022) ("Tex. Civ. Prac. & Rem. Code § 18.001 is a purely procedural rule of Texas law which directly

---

[4] As is noted earlier, while Plaintiff states she seeks past medical expenses in her amended supplemental motion, Plaintiff has repeatedly explained that her past medical expenses are so "modest" that any damages from the Life Care Plan's calculations for future medical expenses would also cover past medical expenses. (Dkt. No. 76 at 5).

collides with Federal Rules of Civil Procedure 26(a)(2) and 43(a) and with Federal Rules of Evidence 702, 801, and 802."); *see also Vazquez v. Aguilera*, No. 5:19-CV-117, 2021 WL 8945613, at *4 (S.D. Tex. Aug. 11, 2021). Because Plaintiff cannot rely on § 18.001 to support a claim for past medical expenses, Plaintiff also cannot establish that she is owed prejudgment interest on said amount. Accordingly, the Undersigned finds that prejudgment interest would be inappropriate in this case and **RECOMMENDS** that the Court **DENY** Plaintiff's request for prejudgment interest.

### F. Postjudgment Interest

Finally, Plaintiff requests that the Court award Plaintiff "[p]ost[j]udgment [i]nterest on the total judgment amount at the rate provided by 28 U.S.C. § 1961, from the date of judgment until paid in full." (Dkt. No. 76 at 11). 28 U.S.C. § 1961 provides, in relevant part, that "[i]nterest shall be allowed on any money judgment in a civil case recovered in district court." As a result, Plaintiff is entitled to postjudgment interest as requested. *See Garza v. Starr County, Texas*, No. 7:12-CV-274, 2014 WL 12774850, at *5 (S.D. Tex. Oct. 27, 2014) (finding postjudgment interest to be appropriate in § 1983 cases). Accordingly, the Undersigned **RECOMMENDS** that Plaintiff 's request for post-judgment interest pursuant to 28 U.S.C. § 1961 be **GRANTED**.

### IV. RECOMMENDATION

Accordingly, the Undersigned **RECOMMENDS** that Plaintiff be awarded $1,000,000 in compensatory damages and $1,000,000 in punitive damages against

22

Defendant Rodriguez. The Undersigned further **RECOMMENDS** that Plaintiff be awarded $402 in court filing fees. The Undersigned also **RECOMMENDS** that Plaintiff be awarded postjudgment interest in the amount authorized by 28 U.S.C. § 1961, which is to be determined at the time of the issuance of the final judgment. As for Plaintiff's request for prejudgment interest, attorney's fees, and litigation expenses other than the court filing fee in this case, the Undersigned **RECOMMENDS** that these requests be **DENIED** in their entirety.

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Report and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Report and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v.*

*United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

**SIGNED** this 22nd day of August, 2025.

Christopher dos Santos
United States Magistrate Judge